## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VYAIRE MEDICAL, INC., *et al.*,[1] | ) | Case No. 24-11217 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| COVINGTON & BURLING LLP and | ) | |
| REED SMITH LLP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Proc. No. 25-_____ (BLS) |
| v. | ) | |
| | ) | |
| VYAIRE MEDICAL, INC. and | ) | |
| VYAIRE HOLDING CO., as | ) | |
| WIND-DOWN DEBTORS; | ) | |
| DAVID M. BARSE, in his capacity as | ) | |
| Plan Administrator of Vyaire Medical, Inc.; | ) | |
| and JOHN DOE LIQUIDATING TRUST, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT,
### BREACH OF CONTRACT, CONVERSION, AND RELATED RELIEF

Plaintiffs Covington & Burling LLP ("**Covington**")[2] and Reed Smith LLP ("**Reed Smith**"

and, together with Covington, "**Law Firms**" or "**Plaintiffs**"), by and through their respective

---

[1] The chapter 11 case is now being administered by the Plan Administrator pursuant to the terms of the *Findings of Fact, Conclusions of Law, and Order Approving the Debtors' Disclosure Statement for, and Confirming the Second Amended Joint Chapter 11 Plan of Vyaire Medical, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 745]. The Plan Administrator's mailing address is Vyaire Medical, Inc., Attn: David M. Barse, Plan Administrator, c/o Cole Schotz P.C., 500 Delaware Avenue, Suite 600, Wilmington, DE 19801.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Vyaire Medical, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 719] (the "**Plan**").

undersigned counsel, hereby bring this *Adversary Complaint* against the above-captioned defendants, Vyaire Medical, Inc. ("**Vyaire Medical**"), Vyaire Holding Co. ("**Vyaire HoldCo**" and together with Vyaire Medical, "**Vyaire**"), David M. Barse, in his capacity as Plan Administrator of Vyaire Medical, Inc., *et al.* (in such capacity, the "**Plan Administrator**"), and John Doe Liquidating Trust (the "**Liquidating Trust**" and together with Vyaire and the Plan Administrator, collectively, the "**Defendants**"). Plaintiffs allege on personal knowledge as to their own respective acts and deeds, and otherwise on information and belief, as follows:

## I.    NATURE OF THE ACTION

1.      In April 2020, Vyaire engaged Covington to represent them in connection with a product recall insurance coverage dispute. At the request of Vyaire, Covington agreed to a contingency fee arrangement in its engagement letter (the "**Covington Engagement Letter**") whereby Covington would receive a percentage of any recovery from the dispute with Vyaire's product recall insurers, including a percentage of any settlement. Pursuant to the Covington Engagement Letter, Covington filed an action in the Supreme Court of the State of New York (the "**Insurance Coverage Action**")[3] on behalf of Vyaire against their product recall insurers in June 2020.

2.      Covington expended significant time and resources, including millions of dollars in attorney time, to prosecute the Insurance Coverage Action. Covington handled significant motion practice and discovery, litigating the case through summary judgment motions. Reed Smith joined Covington as co-counsel and expended significant time and resources in litigating an appeal of the trial court's summary judgment decision with Covington. The action was ready for trial and

---

[3] *Vyaire Holding Company and Vyaire Medical, Inc. v. Westchester Surplus Lines Insurance Company, et al.*, Supreme Court of the State of New York, County of New York, Index No. 652428/2020.

awaited a final pre-trial conference.[4] Through their representation of Vyaire, and pursuant to New York law, the Law Firms obtained an attorney's lien on and vested equitable ownership rights in Vyaire's claims and causes of action asserted in the Insurance Coverage Action, and the proceeds of any settlement or judgment on those claims (the "**Insurance Claims**").

3.    In anticipation of the final pre-trial conference, the Law Firms commenced trial preparation. Meanwhile, on June 9, 2024 (the "**Petition Date**"), Vyaire and several affiliates (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "**Bankruptcy Code**"), thereby commencing the above-captioned chapter 11 cases (the "**Chapter 11 Cas**es") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

4.    On November 14, 2024, the Court entered its Findings of Fact, Conclusions of Law and Order Approving the Debtors' Disclosure Statement for, and Confirming the Second Amended Joint Chapter 11 Plan of Vyaire Medical, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "**Confirmation Order**") [Docket No. 745], thereby confirming the Plan, which became effective by its terms on November 27, 2024 (the "**Effective Date**"). *See* Docket No. 810.

5.    On the Effective Date, (i) both the Covington Engagement Letter and Reed Smith's engagement letter with Vyaire were deemed rejected; (ii) the Plan Administrator became the sole director, officer, and representative of the Wind-Down Debtors and was charged with administering the Wind-Down in accordance with the Plan; and (iii) the Wind-Down Debtor Assets

---

[4] As described below, Reed Smith appeared as co-counsel in 2023 after Mr. Wells, one of the partners who handled the matter from its inception, left Covington. The two firms have agreed to a fee-sharing arrangement.

and Retained Causes of Action (including the Insurance Claims)[5] immediately vested in the Wind-Down Debtors.

6.    Additionally, the Plan permits the Plan Administrator, in his discretion, to transfer all or any portion of the assets of the Wind-Down Debtors to a Liquidating Trust, for the primary purpose of liquidating the Liquidating Trust's assets, reconciling claims asserted against the Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan. As of the date hereof, it is unclear whether the Plan Administrator has elected to establish, much less transfer any assets to, the Liquidating Trust.

7.    On January 24, 2025, the Court entered a *Final Decree Closing Certain Chapter 11 Cases*, leaving Vyaire Medical's Chapter 11 Case as the remaining bankruptcy case. *See* Docket No. 974.

8.    On or about June 12, 2025, without any prior notice to the Law Firms, Defendants settled the Insurance Coverage Action. Notwithstanding the Law Firms' repeated requests over the course of several months and Defendants' promise to produce the settlement agreement, Defendants have refused to divulge any of the details of the settlement to the Law Firms.

9.    On July 15, 2025, counsel for the Plan Administrator finally confirmed that a settlement agreement (the "**Settlement Agreement**") had been executed with respect to the Insurance Coverage Action and that Defendants had received an undisclosed sum of money in connection therewith (the "**Settlement Proceeds**").

---

[5] The Insurance Coverage Action (together with all properties, rights, interests, and assets related thereto or arising therefrom) is a "Retained Cause of Action" under the Plan. Pursuant to Article IV(O) of the Plan, Retained Causes of Action immediately vested with the Wind-Down Debtors as of the Effective Date. *See* Docket No. 720, Exhibit D(iii).

10.     Defendants have refused to negotiate or even discuss, much less pay, the amounts owed to the Law Firms under the parties' contingency fee agreement and under New York statutory law.

11.     By this action, the Law Firms seek declaratory and monetary relief to enforce their attorney charging liens and vested ownership interests under New York law, to recover the contingent fees and costs wrongfully withheld by Defendants, and otherwise to obtain payment for the reasonable attorney time they incurred in representing Vyaire in the Insurance Coverage Action wrongfully withheld by Defendants.

## II.    <u>JURISDICTION AND VENUE</u>

12.     This adversary proceeding is initiated pursuant to Rule 7001(1), (2), (7), and (9) of the Federal Rules of Bankruptcy Procedure and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 - 2202.

13.     Pursuant to 28 U.S.C. §§ 157, 1334, and 2201, this Court has jurisdiction over this adversary proceeding, which constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (K), and (O). In the alternative, this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334(b) because Plaintiffs' claims are related to the Chapter 11 Cases and this lawsuit concerns funds that allegedly are property of the Debtors' estates.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

15.     Pursuant to Rule 7008-1 of the Local Rules of the U.S. Bankruptcy Court for the District of Delaware, Plaintiffs consent to the entry of final orders and judgments by the Court on these claims to the extent it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### III.    PARTIES

16.    Plaintiffs Covington and Reed Smith are Limited Liability Partnerships engaged in the practice of law. The Laws Firms represented Vyaire in the Insurance Coverage Action.

17.    Defendants Vyaire Medical and Vyaire HoldCo, as Wind-Down Debtors, are each a Delaware corporation with a principal place of business in Mettawa, Illinois. The Wind-Down Debtors were created under the Plan to wind-down and liquidate the assets of the Debtors' bankruptcy estates, including resolution of claims and interests.

18.    Defendant David M. Barse is Vyaire's Plan Administrator and is sued in his capacity as Plan Administrator.

19.    Defendant John Doe Liquidating Trust is a trust to which the Plan Administrator is permitted to transfer all or any portion of the assets of the Wind-Down Debtors, including, without limitation, the Settlement Proceeds. The exact identity of the John Doe Liquidating Trust is unknown.

### IV.    FACTUAL BACKGROUND

#### A.    The Law Firms' Representation of Vyaire in the Insurance Coverage Action

20.    On April 1, 2020, Vyaire signed the Covington Engagement Letter with Covington. That letter provides that, in exchange for representing Vyaire in an insurance coverage dispute with their product recall insurance carriers relating to the recall of Vyaire's enFlow medical device, Covington will be paid a fee equal to "35% of any recovery resulting from the Dispute, whether a judgment, settlement or other type of payment or award" (the "**Fee**" or "**Contingency Fee**"). The Fee is subject to a "Trial Exception," which provides that, if trial preparation and trial are necessary to resolve the Dispute, Covington and Vyaire will "in good faith discuss and agree upon a supplemental fee to represent [Vyaire] in those and any subsequent proceedings" ("**Supplemental Fee**").

21.    Pursuant to the Covington Engagement Letter, Covington commenced the Insurance Coverage Action on Vyaire's behalf in New York State Supreme Court on June 11, 2020, by filing a summons and complaint. *See Vyaire Holding Co., et al. v. Westchester Surplus Lines Ins. Co., et al.*, Index No. 652428/2020 (N.Y. Sup. Ct. June 11, 2020). The Insurance Coverage Action asserted claims for breach of contract and declaratory relief against Vyaire's product recall insurers related to their wrongful denial of coverage to Vyaire for losses arising out of the recall of their enFlow medical device.

22.    Covington devised a new claim against Vyaire's insurers. This claim substantially increased the value and likelihood of success of Vyaire's claims in the Insurance Coverage Action. Indeed, the claim devised by Covington was the only claim in the Insurance Coverage Action that ultimately survived summary judgment and appeal.

23.    Over the course of the next several years, Covington expended significant resources in prosecuting the Insurance Coverage Action on behalf of Vyaire. Among other actions, Covington responded to motions filed by the insurer defendants (including a motion to dismiss, a motion to stay, and motions for summary judgment); served and responded to extensive written discovery requests; reviewed and produced voluminous documents; participated in two mediations and otherwise pursued settlement efforts as Vyaire directed; took and defended numerous fact and expert depositions; assisted in the preparation of several expert reports; prepared and filed a motion for partial summary judgment; pursued and briefed an interlocutory appeal of the court's summary judgment decision and moved for re-argument of the appeal; and commenced trial preparation.

24.    On May 9, 2022, Covington filed a Note of Issue on Vyaire's behalf stating that all discovery known to be necessary in the Insurance Coverage Action had been completed and that the action was ready for trial.

25.    Mr. Wells, one of the leading attorneys representing Vyaire in the Insurance Coverage Action, left Covington in September 2023, and joined Reed Smith in October 2023. Reed Smith and Vyaire entered into an engagement letter, dated October 1, 2023 (the "**Reed Smith Engagement Letter**" and together with the Covington Engagement Letter, the "**Engagement Letters**"), which provides that Covington and Reed Smith are co-counsel for the Insurance Coverage Action and that Reed Smith joined in the contingency fee arrangement with Vyaire established in the Covington Engagement Letter.[6]

26.    Reed Smith filed a notice of its appearance in the Insurance Coverage Action on behalf of Vyaire on November 15, 2023. Reed Smith expended significant resources prosecuting the Insurance Coverage Action with Covington on Vyaire's behalf since its engagement as of October 2023, including arguing interlocutory appeals of the trial court's summary judgment decision, briefing cross-motions for re-argument, and trial preparation.

27.    Through the course of their representations of Vyaire, the Law Firms incurred millions of dollars in attorney time that, in accordance with the Fee provisions in their respective Engagement Letters, was not billed to or paid by Vyaire.

**B.    Vyaire and its Affiliates Commence the Chapter 11 Cases**

28.    On the Petition Date, Vyaire (along with its Debtor affiliates) filed for relief under chapter 11 of the Bankruptcy Code. The Law Firms filed proofs of claim in the Chapter 11 Cases, thereby asserting their respective vested ownership interests in the Insurance Claims and any proceeds thereof. *See* Claim Nos. 2, 133 (Covington); Claim Nos. 4, 144 (Reed Smith).

---

[6] On October 24, 2023, the Law Firms agreed to a fee-sharing arrangement consistent with their joint representation of Vyaire in the Insurance Coverage Action.

29.     Both Engagement Letters were rejected under the terms of the Plan. The Law Firms filed an objection with respect to the Plan asserting their attorney's liens and vested ownership interests in the Insurance Claims. *See* Limited Objection and Reservation of Rights of Covington & Burling LLP and Reed Smith LLP to the Proposed Sale Transaction [Docket No. 348].

30.     This Court entered an order confirming the Plan in November 2024. The Confirmation Order states as follows:

> Nothing in Article IX.C or any other provision of the Plan or Confirmation Order, shall affect the attorney's liens and ownership interests asserted by Covington & Burling LLP and Reed Smith LLP ("Law Firms"), as counsel to Vyaire Medical, Inc. and Vyaire Holding Company, in the claims asserted in that certain insurance coverage action pending in the Supreme Court of the State of New York (Index No. 652428/2020) ("Coverage Claims"), the related attorney files, and any proceeds resulting from the Coverage Claims. For the avoidance of doubt, nothing in this Confirmation Order shall be deemed a finding or determination as to whether any such liens or ownership interests exists. Both the Law Firms and the Debtors and/or Wind-Down Debtors reserve all rights and defenses with respect to such claims, liens, and ownership interests.

*See* Confirmation Order, ¶ 111.

31.     Subsequently, the Law Firms and the Plan Administrator unsuccessfully attempted to negotiate a new engagement letter and contingency fee arrangement for the Insurance Coverage Action. At the Plan Administrator's request, the Law Firms moved to withdraw as counsel in the Insurance Coverage Action in February 2025, which the New York State Supreme Court granted in April 2025.

32.     On June 12, 2025, a stipulation of discontinuance was filed in the Insurance Coverage Action.

33.     Upon learning of the discontinuance of the Insurance Coverage Action, the Law Firms immediately sent a letter to the Plan Administrator's counsel requesting information regarding any and all settlement agreements in the Insurance Coverage Action. After numerous

requests, on July 15, 2025, counsel to the Plan Administrator finally confirmed the existence of an executed settlement agreement in the Insurance Coverage Action and that Defendants had received an undisclosed sum of money as part of the settlement. The Plan Administrator's counsel further agreed that the Plan Administrator would retain possession of the settlement funds and refrain from distributing them for any purpose until the Law Firms' interests in those funds is resolved and agreed to send the Law Firms a copy of the settlement agreement.

34.     Notwithstanding numerous follow-up requests, neither the Plan Administrator nor his counsel has provided a copy of the settlement agreement to the Law Firms or disclosed any details regarding the settlement.

35.     The Law Firms have sent several letters and emails to the Plan Administrator's counsel reiterating their request for the settlement agreement and seeking to engage in a good faith negotiation regarding their interest in the settlement, but the Law Firms have received no response to their communications.

36.     Defendants' refusal to disclose the settlement agreement or remit the Law Firms' contractual share constitutes an intentional interference with and conversion of property to which the Law Firms hold equitable title under New York law.

### C.     The Attorneys' Charging Liens and Vested Ownership Interests

37.     New York Judiciary Law § 475 states that "[f]rom the commencement of an action, special, or other proceeding in any court or before any state,… the attorney who appears for a party has a lien upon his or her client's cause of action, claim, or counterclaim, which attaches to a… settlement… and the proceeds thereof in whatever hands they may come."[7]

---

[7] New York law governs the determination of whether the Law Firms have attorney's charging liens related to the Insurance Coverage Action, which was being litigated in New York State Supreme Court by attorneys based in New York. *See In. re Am. Metrocomm Corp.*, 274 B.R. 641, 661 (Bankr. D. Del. 2002) ("[T]he (continued…)

38.    Under this statute, the Law Firms each hold a vested equitable ownership interest in, and attorney's charging lien on, the Insurance Claims. *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462, 467 (1995) ("[T]he charging lien does not merely give an attorney an enforceable right against the property of another; it gives the attorney an equitable ownership interest in the client's cause of action."). A client's property right in a cause of action "is only what remains after transfer to the attorney of the agreed-upon share upon the signing of the retainer agreement." *Id*. Where a client engages counsel pursuant to a contingency fee arrangement, it "equitably assigns a proportionate share of the cause of action to counsel. The client is left only with the remaining balance of any eventual judgment after the attorney receives his agreed upon share." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 178 (2d Cir. 2001).

39.    Thus, an attorney's charging lien "is a vested property right created by law and not a priority of payment," constituting "something more than a mere claim against either property or proceeds." *LMWT Realty Corp.*, 85 N.Y.2d at 467 (internal quotation marks and citation omitted).

40.    The lien and corresponding equitable ownership rights "take[] effect from the time the services were commenced," and "a trustee in a subsequent bankruptcy case involving the client takes the property of the estate subject" to that lien. *In re A. Tarricone, Inc.*, 76 B.R. 53, 56 (Bankr. S.D.N.Y. 1987). Because the Law Firms appeared on behalf of Vyaire in the Insurance Coverage Action, they hold liens on, and a vested ownership interest in, the Insurance Claims.

41.    The Law Firms also have a vested equitable ownership interest in the Settlement Proceeds from the Insurance Coverage Action. By entering into a contingency fee agreement with Covington, Vyaire equitably assigned to Covington a proportionate share of the Insurance Claims.

---

place of performance is the most substantial factor to be considered in determining which state's law governs the determination of whether [a law firm] has a valid lien ….").

Vyaire subsequently engaged Reed Smith as co-counsel with Covington, Reed Smith joined in the contingency fee arrangement between Vyaire and Covington, and the Law Firms entered into a fee sharing arrangement respecting the allocation between them of the Contingency Fee set forth in the Covington Engagement Letter. The Law Firms' vested ownership interest therefore attaches to the Settlement Proceeds of the Insurance Coverage Action, regardless of the person or entity in possession of those proceeds.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (Declaratory Judgment Under 28 U.S.C. § 2201)

42.     The Law Firms incorporate by reference the above Paragraphs.

43.     An actual controversy exists between the Law Firms and Defendants concerning the Law Firms' ownership interests, attorney's liens, and fee entitlements arising from the prosecution and settlement of the Insurance Coverage Action. Defendants have asserted or implied that the Settlement Proceeds constitute property of the estate or are otherwise subject to their exclusive control, thereby disputing the Law Firms' rights under New York law and the Engagement Letters.

44.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), this Court has authority to declare the rights and legal relations of the parties in a case of actual controversy within its jurisdiction. Declaratory relief is necessary and appropriate here to resolve uncertainty regarding the proper ownership, possession, and allocation of the Settlement Proceeds and to prevent further deprivation of the Law Firms' vested property interests.

45.     Under the Engagement Letters, which are governed by New York law, and by operation of New York Judiciary Law § 475, the Law Firms each hold vested ownership interests in, and attorney's liens upon, a defined portion of the Settlement Proceeds obtained in the Insurance

Coverage Action. Those ownership and lien rights attach to the Settlement Proceeds in whatever hands they are found.

46.    The Law Firms are entitled to a declaration that:

(a)    Their collective Contingency Fee equals at least thirty-five percent (35%) of the gross Settlement Proceeds obtained in the Insurance Coverage Action, together with reimbursement of reasonable fees and disbursements incurred in connection with trial preparation of that action;

(b)    Their vested ownership interests and attorney's liens under New York Judiciary Law § 475 attach to the Settlement Proceeds held or controlled by Defendants; and

(c)    Defendants hold the Settlement Proceeds subject to those ownership and lien rights and are obligated to remit the Law Firms' proportionate share forthwith.

47.    Declaratory relief will terminate the present controversy, clarify the parties' respective rights and obligations, and afford complete relief under 28 U.S.C. § 2202, including the entry of such further orders as are necessary and proper to effectuate the Court's declaration.

## SECOND CAUSE OF ACTION

### (Conversion / Misappropriation of Funds – Theft of Settlement Proceeds)

48.    The Law Firms incorporate by reference the above Paragraphs.

49.    The Law Firms jointly represented Vyaire in the Insurance Coverage Action pursuant to Engagement Letters governed by New York law.

50.    Under the Engagement Letters, the Law Firms were to receive a Fee equal to a defined percentage of any recovery obtained on Vyaire's behalf in the Insurance Coverage Action

51.    Pursuant to the Engagement Letters and New York Judiciary Law § 475, the Law Firms each hold vested ownership interests in, and attorney's liens on, a defined portion of the Settlement Proceeds.

52. The Settlement Proceeds are specifically identifiable, segregated, and traceable to an account controlled by Defendants, who hold such funds subject to the Law Firms' ownership interests.

53. The Law Firms have a superior and immediate right of possession to their respective proportionate share of the Settlement Proceeds pursuant to their vested ownership interests under New York law.

54. The Law Firms made written demands that Defendants remit their respective shares of the Settlement Proceeds, which Defendants have failed and refused to do.

55. Defendants knowingly and intentionally have exercised dominion or interference over the Settlement Proceeds in derogation of the Law Firms' rights and interests.

56. As a direct and proximate result of Defendants' conversion and misappropriation, the Law Firms have been deprived of specifically identifiable Settlement Proceeds and have suffered damages in the amount of their respective shares of those proceeds, together with interest, costs, and such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

57. The Law Firms incorporate by reference the above Paragraphs.

58. The Engagement Letters are valid and enforceable contracts by and among Vyaire and the Law Firms, governed by New York law, under which the Law Firms agreed to provide legal services and representation to Vyaire in connection with its Insurance Claims.

59. Under the terms of the Engagement Letters, Vyaire agreed to compensate the Law Firms a percentage of any recovery in connection with the product recall insurance dispute, including any recovery through settlement.

60. The Law Firms performed all their obligations under the Engagement Letters, expending substantial time, resources, and professional skill to prosecute the Insurance Coverage Action on Vyaire's behalf.

61. Following the Law Firms' representation of Vyaire in the Insurance Coverage Action, Defendants, acting on behalf of or as successors to Vyaire, entered into a settlement that generated identifiable Settlement Proceeds.

62. The Engagement Letters were deemed rejected pursuant to the confirmed Plan. Under 11 U.S.C. § 365(g), rejection constitutes a breach, not a termination, of the Engagement Letters. Accordingly, the Law Firms' contractual rights to payment, their vested ownership interests in the Insurance Claims and resulting Settlement Proceeds, and their charging liens under non-bankruptcy law remain valid and enforceable.

63. Defendants have materially breached the Engagement Letters by (a) failing and refusing to pay the Law Firms the Contingency Fee and related disbursements owed under the Engagement Letters, and (b) asserting control over and withholding the Law Firms' contractually defined share of the Settlement Proceeds.

64. As a direct and proximate result of Defendants' breaches, the Law Firms have suffered damages in an amount not less than their contractually defined share of the Settlement Proceeds, together with fees, disbursements, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### (Quantum Meruit)

65. The Law Firms incorporate by reference the above Paragraphs.

66.     The Law Firms rendered valuable legal services to and for the benefit of Vyaire, at the express or implied request of Vyaire and its successors, including Defendants, in connection with the Insurance Coverage Action.

67.     The Law Firms performed those services in good faith and with the reasonable expectation that they would be compensated for the fair and reasonable value of their work, including through the contingency-based compensation structure reflected in the Engagement Letters.

68.     Defendants knowingly accepted, retained, and benefitted from the Law Firms' services, including through the favorable settlement of the Insurance Coverage Action and the receipt of the Settlement Proceeds.

69.     The Law Firms' rates are comparable to rates charged by other New York law firms acting in a similar capacity.

70.     It would be inequitable and unjust for Defendants to retain the benefits of the Law Firms' professional services without compensating them for the reasonable value of those services.

71.     Accordingly, in the alternative to any contractual relief, the Law Firms are entitled to recover from Defendants the fair and reasonable value of the legal services rendered, together with interest, costs, and such other relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

72.     The Law Firms incorporate by reference the above Paragraphs.

73.     Defendants have been unjustly enriched through their receipt, retention, and control of the Settlement Proceeds generated by the Law Firms' efforts in the Insurance Coverage Action.

74.    The Law Firms conferred a direct and substantial benefit upon Defendants by prosecuting and resolving the Insurance Coverage Action in a manner that produced a monetary recovery and Settlement Proceeds that Defendants now hold or control.

75.    Defendants knowingly accepted and retained that benefit, with full knowledge of the Law Firms' contributions and equitable ownership of a portion of the Settlement Proceeds.

76.    Defendants have failed and refused to remit the Law Firms' proportionate share of the Settlement Proceeds, and by doing so, have retained a benefit to which they are not justly entitled.

77.    It would be inequitable and contrary to good conscience for Defendants to retain the Settlement Proceeds, or any portion thereof, without paying the Law Firms the value of the benefit conferred.

78.    Accordingly, the Law Firms are entitled to restitution from Defendants in an amount equal to the portion of the Settlement Proceeds wrongfully retained, together with interest, costs, and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

### (Constructive Trust / Equitable Lien)

79.    The Law Firms incorporate by reference the above Paragraphs.

80.    This cause of action is pleaded in the alternative to, and in aid of, Plaintiffs' legal claims, to secure and preserve the equitable relief necessary to prevent unjust enrichment and to ensure restitution of specifically identifiable property belonging to the Law Firms.

81.    The relationship among the Law Firms and Defendants was fiduciary and confidential in nature. Vyaire entrusted the Law Firms to pursue and recover insurance proceeds on its behalf, and Defendants, as successors or representatives of Vyaire, undertook obligations to account for and properly distribute those proceeds.

82.     Pursuant to the Engagement Letters and New York Judiciary Law § 475, the Law Firms possess vested ownership interests in, and attorney's liens on, a defined portion of the Settlement Proceeds. Those ownership and lien rights attach to the Settlement Proceeds in whatever hands they may be found.

83.     Upon information and belief, Defendants hold, control, or have transferred the Settlement Proceeds or portions thereof while failing and refusing to remit to the Law Firms their proportionate shares, notwithstanding the Law Firms' vested and equitable ownership interests.

84.     Defendants' continued possession and retention of the Settlement Proceeds, without recognition or payment of the Law Firms' ownership interests, constitutes unjust enrichment and inequitable conduct under New York law.

85.     To prevent unjust enrichment and to restore the specific property rightfully belonging to the Law Firms, equity requires the imposition of a constructive trust upon the Settlement Proceeds, and upon any account or property into which such proceeds have been deposited, transferred, or commingled.

86.     Alternatively, or in addition, the Court should recognize and enforce an equitable lien in favor of the Law Firms upon the Settlement Proceeds, in the amount of their proportionate share of those proceeds, together with any fees and disbursements owed under the Engagement Letters.

87.     Accordingly, the Law Firms seek (a) a declaration that Defendants hold the Settlement Proceeds in constructive trust for the Law Firms' benefit; (b) the imposition and enforcement of an equitable lien in favor of the Law Firms against the Settlement Proceeds and any traceable assets; and (c) an order directing Defendants to turn over to the Law Firms their

proportionate share of the Settlement Proceeds, together with interest, costs, and such other and further relief as the Court deems just and proper.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and grant the following relief:

A.   Declare, pursuant to 28 U.S.C. §§ 2201–2202 and New York Judiciary Law § 475, that:

    (i)   the Law Firms each hold vested ownership interests in a defined portion of the Settlement Proceeds;

    (ii)   such ownership interests attach to the Settlement Proceeds in whatever hands they may be found, and Defendants hold those proceeds subject to the Law Firms' rights and interests; and

    (iii)   the Law Firms are entitled to not less than thirty-five percent (35%) of the gross Settlement Proceeds, together with reasonable fees and disbursements incurred in connection with trial preparation;

B.   Award:

    (i)   damages for Defendants' breach of contract, conversion, and related tortious conduct in an amount not less than the Law Firms' contractual and equitable share of the Settlement Proceeds, together with all unpaid fees, disbursements, interest, and costs;

    (ii)   in the alternative, the fair and reasonable value of the Law Firms' legal services under the doctrine of quantum meruit; or

    (iii)   in the further alternative, restitution for unjust enrichment in an amount equal to the portion of the Settlement Proceeds wrongfully retained by Defendants;

C.   Impose a constructive trust upon the Settlement Proceeds and any account or property into which such proceeds have been deposited, transferred, or commingled, for the benefit of the Law Firms;

D.   Recognize and enforce an equitable lien in favor of the Law Firms upon the Settlement Proceeds and any traceable assets, in the amount of their proportionate share thereof;

E.      Order the immediate turnover and delivery of the Law Firms' proportionate share of the Settlement Proceeds to the Law Firms, and direct Defendants to account for all funds derived from the Insurance Coverage Action;

F.      In the alternative, enforce the equitable lien recognized in favor of the Law Firms, directing immediate turnover or disbursement to the Law Firms of the Settlement Proceeds (or traceable assets) to the extent necessary to satisfy their secured interests;

G.      Award punitive damages, as appropriate, for Defendants' willful, wanton, and malicious conversion and misappropriation of the Law Firms' property;

H.      Award prejudgment and post-judgment interest, costs, and reasonable attorneys' fees as permitted by law; and

I.      Grant such other and further legal and equitable relief as is appropriate to effectuate the purposes of the foregoing judgment.

Dated: November 3, 2025
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE 3995)
Zhao (Ruby) Liu (DE 6436)
824 N. Market St, Ste 810
Wilmington, Delaware 19801
Phone: (302) 777-1111
E-mail: rosner@teamrosner.com
      liu@teamrosner.com


-and-

**COVINGTON & BURLING LLP**

Dianne F. Coffino (*pro hac vice* forthcoming*)*
C. William Phillips (*pro hac vice* forthcoming)
Jordan S. Joachim (*pro hac vice* forthcoming)
30 Hudson Yards
New York, NY 10001-2170
Telephone: (212) 841-1000
E-mail: dcoffino@cov.com
      cphillips@cov.com
      jjoachim@cov.com

*Counsel for Plaintiff Covington & Burling LLP*

**REED SMITH LLP**

*/s/ Jason D. Angelo*
Jason D. Angelo (No. 6009)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778.7500
Facsimile: (302) 778.7575
E-mail: jangelo@reedsmith.com

-and-

**REED SMITH LLP**

Bert Wells (*pro hac vice* forthcoming)
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 549.0323
Facsimile: (212) 521.5450
E-mail: bert.wells@reedsmith.com

*Counsel for Plaintiff Reed Smith LLP*